UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In the Matter of Arbitration between )<br>)<br>ZURICH AMERICAN INSURANCE )<br>COMPANY and AMERICAN ZURICH )<br>INSURANCE COMPANY, )<br>)<br>          Petitioners, )<br>)<br>  and )<br>)<br>TRENDSETTER HR, LLC, TSL STAFF )<br>LEASING, INC. and TREND PERSONNEL )<br>SERVICES, INC., )<br>)<br>          Respondents. | Case No. |

**PETITIONERS' MEMORANDUM IN SUPPORT OF MOTION
TO ADJUDICATE PETITION TO COMPEL ARBITRATION**

      Petitioners Zurich American Insurance Company and American Zurich Insurance Company (collectively, "Zurich"), respectfully request that this Court grant Zurich's Petition to Compel Arbitration against the Respondents Trendsetter HR, LLC, TSL Staff Leasing, Inc. and Trend Personnel Services, Inc. (collectively, "Respondents").

**BACKGROUND**

      Zurich and the Respondents entered into various written agreements related to the financial terms associated with workers compensation insurance provided by Zurich to Respondents between 2011 and 2015 ("Program Agreements"). (See Affidavit of Bohdan Gursky attached as Exhibit A ("Gursky Aff.") at ¶3.) The Program Agreements contain arbitration clauses requiring arbitration of, "[a]ny dispute arising out of the interpretation, performance or alleged breach of" the Program Agreements. (Id.) After Respondents failed to pay Zurich amounts it owed under those Program Agreements, Zurich filed an Arbitration

1

Demand on June 26, 2015, with the American Arbitration Association ("AAA") in which Zurich seeks to recover an amount recently calculated to total $3,255,592.29. (Id.)

Approximately one month after Zurich appointed its party-appointed arbitrator, Respondents submitted eight letters to the AAA, containing their answer to the Arbitration Demand and asserting numerous objections to the arbitration proceeding, including objecting to the arbitrability of any dispute and certain disputes in particular. (Id. at. ¶5.) Respondents also argued to the AAA that the arbitration proceeding should be administered by the AAA as four separate proceedings and expressed their preference for the method of delivery of documents and notices. (Id.) Respondents also purported to appoint multiple arbitrators as their party-appointed arbitrator. (Id.) At the request of the AAA, Zurich submitted a response to Respondents' Answering Statement and Objection to Jurisdiction that outlined Zurich's position regarding the issues and challenges asserted by Respondents. (Id. at. ¶6.)

After reviewing the parties' submissions, the AAA determined that Zurich's Arbitration Demand met the AAA's filing requirements and advised that it would proceed to administer the arbitration. (Id. at ¶7.) The AAA gave Respondents until September 18, 2015 to appoint a single arbitrator for the arbitration proceeding. (Id.) Respondents subsequently appointed Jonathan Rosen as their sole party-appointed arbitrator on September 18, 2015. (Id. at ¶8.). Mr. Rosen has not yet disclosed his potential conflicts or been confirmed by the AAA. Consequently, the third arbitrator has not yet been selected.

Despite appearing through counsel in the arbitration, expressing their preferences for how the arbitration proceeding should be handled, and appointing a single arbitrator as directed by the AAA, Respondents filed an action in the 116th Judicial District court in Dallas, Texas on September 24, 2015 ("Dallas Action"). (Id. at ¶9.) In the Dallas Action, Respondents assert that

the arbitration should be stayed because they are entitled to have the proceeding administered as four separate arbitration proceedings. (Id.) Respondents did not name Zurich as a party in the Dallas Action yet purported to state claims against Zurich for violations of the Texas Deceptive Trade Practices Act (Texas Business and Commerce Code § 17.46), violations of the Texas Insurance Code (Chapter 541), and breach of the duty of good faith and fair dealing. (Id.)

Although Respondents purportedly asserted claims only against a non-party, Zurich, Respondents named the AAA and two of its employees as the sole defendants in the Dallas Action. (Id.) In their petition, Respondents concede that they are parties to agreements requiring arbitration with Zurich and requested the court to stay the arbitration proceeding until such time the court could order four arbitration proceedings between Zurich and Respondents. (Id.) Respondents also contend in their petition that their affirmative claims against Zurich are not arbitrable. (Id.)

Respondents filed an Application for a Temporary Restraining Order ("TRO") in the Dallas Action on the same day that they filed that Action, September 24, 2015. (Id.) Through their Application for a TRO, Respondents sought a temporary stay of the arbitration proceeding on the grounds that it was only one proceeding instead of four. (Id.) The Application for the TRO states that each of the parties' contracts contain arbitration agreements and that the AAA failed to follow the arbitration agreements by administering one arbitration proceeding. (Id.) In what is believed to be an *ex parte* hearing, the court granted the Respondent-drafted TRO that same day, thereby enjoining the AAA and its two employees from administering the arbitration proceeding that Zurich commenced. (Id. ¶10.) The TRO states that a hearing will be conducted on October 8, 2015, at 2:00 PM for the purpose of determining whether it should be converted

3

into a Temporary Injunction before its expiration at midnight on October 8, 2015. (Id.) Zurich knew nothing about the Dallas Action until after the TRO was entered. (Id.)

On September 28, 2015, the AAA advised Respondents and Zurich that, pursuant to the TRO, the AAA has suspended further administration of the arbitration until further notice. (Id. at ¶11.) Notwithstanding the TRO enjoining the AAA from administering the arbitration and the AAA's confirmation that it has suspended administering the arbitration, Respondents submitted three letters to the AAA on September 29, 2015, purporting to appoint three individuals as Zurich's party-appointed arbitrators for a subset of the disputes that are referenced in Zurich's Arbitration Demand. (Id. at ¶12.) On October 1, 2015, Zurich filed a Petition to Compel Arbitration in this Court, which is within the district in which the arbitration hearing is being conducted.

**ARGUMENT**

I. **The Parties Should Be Ordered to Proceed to Arbitration in Accordance with the Terms of Their Agreement.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, was enacted against "centuries of judicial hostility to arbitration agreements * * * to place arbitration agreements upon the same footing as other contracts." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citations and internal quotation marks omitted). Reflecting a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), the FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 4 of the FAA provides authority to federal courts to compel arbitration upon five days' written notice:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C.A. § 4 (West).[1] This rule requires courts to address two simple questions: First, is there an agreement to arbitrate? Second, has a party been aggrieved by non-compliance with an agreement to arbitrate? In this action, the answer to both questions is yes.

The Texas Petition and the Arbitration Demand reveal that both parties concede they entered into multiple, identical arbitration agreements that state:

> Any dispute arising out of the interpretation, performance or alleged breach of this Agreement shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules . . . .

(Ex. A at ¶¶ 3 & 9.) Thus, the court should be "satisfied that the making of the agreement for arbitration" is not in doubt.

That leaves only the question of whether the Respondents have engaged in what the FAA calls a "failure to comply" that has "aggrieved" Zurich. The unequivocal answer is yes. Respondents have shut down the arbitration. Respondents ran into court on an *ex parte* basis without notice to Zurich to obtain a court order enjoining the administrator of the arbitration.

---

[1] Because the FAA applies to disputes "involving commerce," (see 9 U.S.C. §1), and large commercial insurance programs, by definition, impact commerce, the FAA applies here. *See United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 546-47 (1944) (holding insurance constitutes interstate commerce even if particular insurance contracts are intrastate). Moreover, the parties are engaged in commerce between Zurich's principal place of business in Illinois and Respondents' principal place of business Texas.

5

That conduct is inconsistent with an obligation to arbitrate. It is also a blatant violation of two key aspects of the parties' agreement that Respondents purport to be enforcing in the Dallas Action.

As previously stated, the parties' agreement expressly states that arbitration shall be conducted under the AAA's Commercial Arbitration Rules. Among those rules is Rule 52(b), which states: "Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration." (See AAA Commercial Arbitration Rules, attached as Exhibit B, at R-52.) Suing the AAA is wildly inconsistent with the Respondents' agreement that the AAA is not a proper party to any judicial proceeding related to the arbitration. Additionally, the parties agreed to the following rule: "When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration." (Ex. B at R-2.) Yet, Respondents' requested in the Dallas Action that a court suspend the AAA's authority to administer the arbitration. This is also inconsistent with Respondents' agreement to allow the AAA to administer the arbitration.

To be sure, Respondents are arbitrating to some extent. They appeared through counsel in the arbitration. Respondents appointed a party-appointed arbitrator after being advised by the AAA they could not appoint four party-appointed arbitrators. Respondents expressed preferences for the delivery of documents in connection with the arbitration proceeding. Respondents latest "participation" in the arbitration came nearly one week after obtaining a TRO halting the arbitration. On September 29, 2015, Respondents purported to appoint three individuals from Respondents' locale as Zurich's party-appointed arbitrators for certain subsets of the dispute in the arbitration proceeding.

6

Respondents are unquestionably attempting to undermine the arbitration proceeding. The Dallas Action is a blatant attempt to appeal the AAA's rejection of their request that the AAA splinter the arbitration proceeding into four proceedings. Judge Posner recently called out similar conduct:

> A party to arbitration can't, while the arbitration of an issue is proceeding, ask a court, whether the district court or this court, to weigh in on the issue. "A party's request to tell an arbitrator how to act in a pending proceeding is not a request to compel arbitration, no matter what caption the litigant puts on its motion.... Review comes at the beginning or the end, but not in the middle. Once the arbitration is over, the losing side can seek judicial review."

*Hennessy Industries, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676 (7th Cir. 2014) quoting *Central States, Southeast & Southwest Areas Pension Fund v. U.S. Foods, Inc.*, 761 F.3d 687, 689 (7th Cir. 2014).

Thus, there can be no doubt that the two requirements of Section 4 have been met. There is an agreement to arbitrate and it has been breached by one of the parties. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The parties should be ordered to arbitrate in accordance with the terms of their agreement.

II. **Any Issues Concerning the Administration of the Arbitration and the Scope of the Arbitration Agreement Should be Resolved by the Arbitrator Not this Court.**

The Dallas Action seeks to halt the arbitration for two fundamental reasons, one of which relates to the administration of the arbitration and the second of which relates to the claims being arbitrated. Neither has any merit.

### A. Respondents Agreed the AAA Would Administer any Arbitration.

Respondents have this theory that the arbitration proceeding should be four separate proceedings because they entered into four agreements during the years they did business with Zurich. Thus, Respondents argued in their Answering Statement and Objection to Jurisdiction that,

> the AAA must require Claimants to pay additional filing fees for the administration of four (4) separate arbitrations between the Parties as required by the contracts. One arbitration should proceed between Trendsetter HR, LLC, TSL Staff Leasing, Inc., Trend Personnel Services, Inc. and American Zurich Insurance Company for the disputes arising out of the May 29, 2012, Incurred Loss Contract, one arbitration between the same parties under the June 1, 2013, Incurred Loss Contract, one arbitration between Trendsetter HR, LLC and TSL Staff Leasing, Inc., and American Zurich Insurance Company for the 2014 Paid Loss Contract, and to the extent there is a validly executed arbitration agreement in the 2011 Paid Loss Contract, for another arbitration between Trend Personnel Services, Inc., Zurich American Insurance Company and American Zurich Insurance Company.

(Ex. A at ¶5.) Respondents argued that, "[r]equiring Respondent[s] to proceed in one arbitration denies [them] a fundamentally fair hearing, violates the FAA, and violates U.S. Supreme Court precedent." (Id.) The AAA received this advocacy, considered Zurich's response, and ruled on September 11, 2015, that it would continue to administer the arbitration proceeding, stating:

> After a review of the parties' contentions, and based upon the Council's Review Standards available at www.adr.org/arc, to which the parties were previously referred, the Council has made the administrative determination that the Claimants have met the AAA's filing requirements by filing a demand for arbitration providing for administration by the AAA under its Rules or by naming the AAA as the dispute resolution provider. Accordingly, in the absence of an agreement by the parties or a court order staying this case, the AAA will proceed with the administration of the arbitration.

(Id. at ¶7.)

The Dallas Action is nothing more than a second bite at this apple. The TRO that the Respondents drafted for the 116th Judicial District states:

8

> The AAA is failing to comply with the express language of each of the four arbitration agreements and is compelling Plaintiffs to participate in one arbitration when Plaintiffs are entitled to have their claims, defenses, and damages arising under each insurance contract heard in four separate arbitrations.

(Id. at ¶10.) Based on this "finding," the 116th Judicial District enjoined the AAA from administering the arbitration proceeding. (Id.)

Respondents' advocacy in the 116th Judicial District is not consistent with the AAA's Commercial Rules and the contracts they are purporting to enforce. As previously stated, the AAA Commercial Rules, which are part of the parties' agreement, state that the AAA has authority to administer any proceeding initiated by Zurich. Respondents have raised the issue of "de-consolidation" within the arbitration and lost. The question of whether the arbitration should be administered as one proceeding or multiple proceedings is a matter that Respondents entrusted to the arbitration. Even if they had not raised this issue unsuccessfully within the arbitration, this issue is entrusted to arbitrators not courts. *See, e.g., Emp'rs. Ins. Co. of Wausau v. Century Indem. Co.,* 443 F.3d 573, 581 (7th Cir. 2006) (holding that the consolidation of an arbitration proceeding and/or the splitting of an arbitration proceeding into multiple proceedings is a procedural issue for an arbitrator to decide). In *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635 (7th Cir. 2011), the Seventh Circuit addressed a dispute where one of the two sides to a pending arbitration wanted to reconsider its decision to have twelve parties on one side arbitrate with one party on the other side and thus "de-consolidate" the arbitration proceeding. The Seventh Circuit rejected the notion that litigation in the middle of an arbitration regarding such a matter was appropriate. "[J]udges must not intervene in pending arbitration to direct arbitrators to resolve an issue one way rather than another." *Blue Cross Blue Shield of Massachusetts,* 671 F.3d at 638.

9

That is precisely what Respondents are doing in the Dallas Action. "If [Respondents'] wanted a judge to decide whether [Zurich's] demands should be arbitrated jointly or separately, it should have refused to appoint an arbitrator." *Id.* Respondents are attempting to have a court overturn the AAA's decision to administer a single arbitration proceeding in the middle of that proceeding. The Respondents' effort to do so violates its agreements with Zurich and is futile under governing law.

### B. Respondents Agreed that the AAA Would Decide Issues of Arbitrability.

The second major theme of the Dallas Action is that the Respondent's affirmative claims against Zurich for violations of various Texas insurance statutes fall outside of the parties' agreement to arbitrate. This argument, however, is being made in the wrong venue. Respondents' contention that some or all of its claims fall outside the arbitration clause must be resolved by the arbitrator.

The Supreme Court has recognized that parties may delegate gateway issues such as whether a particular dispute is within the scope of an arbitration agreement to an arbitrator. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as * * * whether their agreement covers a particular controversy."). Although courts can be authorized to decide gateway issues regarding arbitrability, where the parties have made a clear and unmistakable agreement that issues regarding arbitrability are to be resolved by arbitrators, courts simply compel arbitration and leave it to the arbitrators. *See, e.g., Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

In this case, the parties agreed to abide by the AAA's Commercial Rules, which provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Ex. B at R-7.) Courts in the Northern District of Illinois have consistently held that an arbitration agreement which references the AAA Rules is "clear and unmistakable" evidence of an intent to arbitrate the issue of arbitrability. *Imperial Crane Sales, Inc. v. Sany Am., Inc.*, 15 C 859, 2015 WL 4325483, at *4 (N.D. Ill. July 15, 2015) (holding that incorporation of AAA Rules, including Rule 7(a), was "clear and unmistakable" evidence that the parties agreed to have an arbitrator decide the scope of the parties' arbitrable disputes); *Wal–Mart Stores, Inc. v. Helferich Patent Licensing, L.L.C.*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014) ("[B]y incorporating the AAA Rules, including Rule 7(a), into the arbitration provision, [the parties] clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate [their] disputes."); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10–cv–6896, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011) (holding that specific incorporation of AAA Rules "clearly and unmistakable" revealed intent for arbitrator to determine arbitrability issues). While the Seventh Circuit has not addressed this issue, several circuits have followed the same approach as *Imperial Crane Sales*, *Helferich*, and *Yellow Cab*. *See, e.g., Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch L.P.*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Accordingly, Respondents' contention that some or all of its claims against Zurich fall outside the arbitration clause must be resolved by the arbitrator. *See, e.g., Wal–Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713 (N.D. Ill. 2014) (explaining that the court did not need to decide whether the parties agreed to arbitrate certain issues because agreement

called for arbitrator to decide issues of arbitrability); *Conway v. Done Rite Recovery Servs., Inc.*, No. 14–cv–5182, 2015 WL 1989665 (N.D. Ill. April 30, 2015) (compelling arbitration of a dispute despite one party's argument that certain claims fell outside the scope of arbitrable issues where the parties agreed that the arbitrator would decide whether and to what extent a dispute between the parties is subject to arbitration).

### III. The Court's Order Should Ensure that the Respondents' Manipulation of the 116th Judicial District Does Not Interfere with this Court's Order Compelling Arbitration.

Under Section 4 of the FAA, courts that are persuaded that there is an agreement to arbitrate that is not being complied with must order the parties to "proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. As previously stated, the parties expressly agreed to abide by the AAA's Commercial Rules. Rule 2 states, "When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration." The Respondents' lawsuit against the AAA violates this rule and has made it impossible for the parties to proceed to "arbitration in accordance with the terms of the agreement." Without the AAA administering the arbitration, no amount of effort by the parties will be meaningful.

The Respondents should be compelled to proceed in accordance with their agreement, which is fundamentally inconsistent with the state court action in which they are challenging the AAA's administration of the arbitration. The Respondents should be enjoined from taking any action that interferes with the AAA's administration of the arbitration. The Respondents should be required to provide a copy of this Court's Order compelling arbitration to the 116th Judicial District. Respondents should be prohibited from pursuing any litigation, including the Dallas Action, related to the arbitration during the pendency of the arbitration. Respondents should be

12

ordered to dismiss the Dallas Action immediately. Without such an order, any order from this Court compelling Respondents to arbitrate would be meaningless.

The terms of the Order should also address the AAA because the Respondents' conduct has affected the AAA's administration of the arbitration. As previously stated, the Respondents expressly authorized the AAA to administer any arbitration initiated under the AAA's Commercial Rules. (Ex. B at R-2.) Yet, the AAA has been ordered to halt administering the arbitration before a panel could even be formed. Without either a panel or an administrator, the parties are unable to proceed forward. To remedy this situation and provide meaning to any order compelling arbitration, the AAA must be ordered to administer the parties' arbitration proceeding in accordance with the terms of the parties' agreement and the AAA's Commercial Rules.

Finally, the 116th Judicial District must be addressed in any order issued by this Court. The TRO issued in the Dallas Action has affected the AAA and interfered with the parties' agreement to arbitrate. The AAA is impartial. The AAA is not an advocate. In its letter advising the parties that it will no longer administer the arbitration, the AAA requested that the parties keep it apprised of the status of the case in which it and its employees are the sole defendants. This indicates that the AAA does not intend to advocate in the Dallas Action. Without a meaningful adversary involved in the Dallas Action, the 116th Judicial District will not be able to adjudicate the matter as anything other than an *ex parte* proceeding. This Court's order should require the Respondents to advise the 116th Judicial District as to the existence of any order issuing from this Court.

In addition, the 116th Judicial District should be stayed from interfering with any arbitration proceeding that is compelled under Section 4 of the FAA. State courts may be

enjoined from interfering with an arbitration that has been compelled by a federal court acting under Section 4 of the FAA. *See, e.g., Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 705 (5th Cir. 2002) (affirming the granting of a petition to compel arbitration under § 4 of the Federal Arbitration Act that stayed pending state court proceedings); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002) (affirming an order enjoining state-court proceedings and compelling franchisees to arbitrate their disputes). Accordingly, the 116th Judicial District should be directed to refrain from interfering with the arbitration proceeding, including but not limited to taking any action to issue or enforce any order purporting to stay the arbitration in whole or in part or administer the arbitration in a particular manner.

## CONCLUSION

For the foregoing reasons, Zurich respectfully requests that the Court grant the relief requested in the Petition and grant such other and further relief as is appropriate.


Dated: October 1, 2015

Respectfully submitted by,
Zurich American Insurance Company
and American Zurich Insurance Company

By: s/ Matthew T. Furton
One of its attorneys

Matthew T. Furton (ARDC #6229285)
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
312.443.0700
mfurton@lockelord.com