IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY,<br><br>    Petitioners,<br><br>    v.<br><br>TRENDSETTER HR, LLC, TSL STAFF LEASING, INC. and TREND PERSONNEL SERVICE,<br><br>    Respondents. | Case No. 15 C 8696<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Confirm the Arbitration Award [ECF No. 75] filed by Zurich American Insurance Company and American Zurich Insurance Company (collectively, "Zurich"). For the reasons stated below, the Motion is granted.

### I. BACKGROUND

The parties agree as to the operative facts. Trendsetter HR and Trend Personnel Services (collectively "Trend") contracted with Zurich for worker's compensation insurance. During each year between 2011 and 2015, the two companies executed a written policy agreement — four total agreements over the four-year period. The parties also entered into various "Program Agreements" clarifying the terms of the initial workers compensation policies. Each Program Agreement includes an

arbitration clause, by which the parties agreed that "[a]ny dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules. . . ." (ECF No. 75, Ex. 1, at 65). The arbitration clause defines the terms of arbitration, including the method for requesting arbitration and the makeup of the arbitration panel. The clause dictates that the panel is to consist of an arbitrator selected by each party and an impartial arbitrator selected by the two previously selected arbitrators. The arbitration clause further allows for confirmation of an award "in any court having jurisdiction." *Id.*

In June 2015, Zurich filed for arbitration of a payment dispute. Trend filed objections with the AAA challenging, among other things, the AAA's jurisdiction, and seeking separate arbitrations under each of the four Program Agreements. In September 2015, the AAA concluded that Zurich had complied with the AAA's filing requirements and that arbitration would continue in a consolidated proceeding in front of one arbitration panel. Subsequently, Zurich and Trend each selected an arbitrator and the two arbitrators agreed on an impartial third panel member. As arbitration commenced, Trend participated in the arbitration proceedings through counsel and

at the same time actively opposed the arbitration by filing a Complaint against the AAA in Texas state court (the "Texas action"). The Texas action did not name Zurich as a party but sought a Temporary Restraining Order ("TRO") against the AAA to enjoin the arbitration proceedings. The Texas court granted the TRO in September 2015, and it expired less than a month later.

In light of Trend's filing of the Texas action, Zurich filed a Petition to Compel Arbitration in this Court. In November 2015, the Court granted Zurich's Motion to Compel Arbitration. The Court enjoined Trend from interfering with the arbitration proceedings, including further pursuance of the Texas action.

The parties returned to arbitration. Predicting future legal resistance, Zurich petitioned the arbitrators to order Trend to produce a pre-hearing security for the amount Zurich sought to be awarded through arbitration. In June 2016, the arbitrators ordered Trend to produce a pre-hearing security in the amount of $4,597,779.06. To date, Trend has not put forth any money. Zurich seeks to compel payment of the pre-hearing security in accordance with 9 U.S.C. § 9. Trend argues that the award should be vacated pursuant to 9 U.S.C. § 10(a)(4).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs arbitration agreements in contracts affecting interstate

commerce. *See, Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 n.5 (7th Cir. 2008). "Insurance compan[ies] doing business across state lines engage[] in interstate commerce." *Humana Inc. v. Forsyth,* 525 U.S. 299, 306 (1999). The insurance agreements in dispute were executed across state lines (Zurich from Illinois and Trend from Texas). Therefore, the arbitration clauses are governed by the FAA. *See, Humana Inc.,* 525 U.S. at 306. Under the FAA, if the agreement provides for confirmation of an arbitration award by a specific court, that court *must* confirm the award unless certain statutory exceptions apply. *See,* 9 U.S.C. § 9. These exceptions are defined in Sections 10 and 11 of the FAA.

A pre-hearing security, like the one awarded to Zurich by the arbitration panel, is an "award" for purposes of the FAA. *See, Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Cont'l Cas. Co.,* 37 F.3d at 347-48 (holding that an "interim order of security" "constitutes an 'award' under [9 U.S.C. § 10]"). Thus, the Court must affirm the award unless a statutory exception applies. *See,* 9 U.S.C. § 9. Section 10(a)(4) is one such exception. It allows a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

"A party seeking relief under [Section 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter,* 133 S.Ct. 2064, 2068 (2013). "A court may vacate an arbitration award only if the arbitration panel's decision to grant the award does not draw its essence from the agreement between the parties." *Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Cont'l Cas. Co.,* 37 F.3d 345, 349 (7th Cir. 1994). "Factual or legal errors by arbitrators — even clear or gross errors — do not authorize courts to annul awards." *Gingiss Int'l, Inc. v. Bormet,* 58 F.3d 328, 333 (7th Cir. 1995) (internal quotations omitted). Where a contract's validity is disputed in arbitration instead of the validity of the arbitration clause only, courts will defer to the judgment of the arbitrators. *See, Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 811 (7th Cir. 2011).

### III. ANALYSIS

Essentially, Trend contends that the arbitrators exceeded their authority because the prehearing security does not "draw its essence" from the Program Agreements. Strong deference is given to decisions made by arbitrators. *See, Oxford Health Plans LLC,* 133 S.Ct. at 2068. "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to 'draw its essence from the [parties' agreement].'" *Ethyl Corp. v. United Steelworkers of Am.,* 768

F.2d 180, 184-85 (7th Cir. 1985) (emphasis in original) (citation omitted). The Court finds support for the award in the Program Agreements and the arbitration clause contained therein. *See, Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 632-33 (7th Cir. 2003).

Although the Program Agreements do not specifically mention a prehearing security as a remedy available to the parties, this is not dispositive. In *Yasuda*, the Seventh Circuit emphasized the importance of a "wide range of remedies" to successful arbitration. *Yasuda*, 37 F.3d at 351. The court noted that just because specific remedies have not been articulated in the parties' agreement, "does not mean remedies are not available." *Id.* The court reasoned that, "[i]f an enumeration of remedies were necessary, in many cases the arbitrator would be powerless to impose any remedy, and that would not be correct. Since the arbitrator derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant." *Id.* (internal quotations omitted).

Here, the Program Agreements specify that arbitration will be conducted under the AAA's Commercial Arbitration Rules. Under Rule R-37 of the Commercial Rules, "[t]he arbitrator may take whatever interim measures he or she deems necessary" including in "the form of an interim award." AAA Comm. Arb. R. R-37(a)-(b). Moreover, arbitrators are authorized to "require

F.2d 180, 184-85 (7th Cir. 1985) (emphasis in original) (citation omitted). The Court finds support for the award in the Program Agreements and the arbitration clause contained therein. *See, Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 632-33 (7th Cir. 2003).

Although the Program Agreements do not specifically mention a prehearing security as a remedy available to the parties, this is not dispositive. In *Yasuda*, the Seventh Circuit emphasized the importance of a "wide range of remedies" to successful arbitration. *Yasuda*, 37 F.3d at 351. The court noted that just because specific remedies have not been articulated in the parties' agreement, "does not mean remedies are not available." *Id.* The court reasoned that, "[i]f an enumeration of remedies were necessary, in many cases the arbitrator would be powerless to impose any remedy, and that would not be correct. Since the arbitrator derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant." *Id.* (internal quotations omitted).

Here, the Program Agreements specify that arbitration will be conducted under the AAA's Commercial Arbitration Rules. Under Rule R-37 of the Commercial Rules, "[t]he arbitrator may take whatever interim measures he or she deems necessary" including in "the form of an interim award." AAA Comm. Arb. R. R-37(a)-(b). Moreover, arbitrators are authorized to "require

security for the costs of such measures." *Id.* R-37(b). This rule has been held to authorize the award of a prehearing security, *see, e.g., Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1023 n.1, 1025 (9th Cir. 1991), because such interim awards are important to preserving a party's stake in arbitration and "protect[ing] the bargain giving rise to the dispute." *Yasuda,* 37 F.3d at 351. Thus, by adopting the AAA's commercial rules in the Program Agreements, the parties implicitly included the arbitrators' authority to grant an interim award — like the prehearing security at issue.

Trend argues that even if the arbitrators had the authority to grant a prehearing security, the award should be vacated because the arbitrators calculated the amount of the award without consideration of the Program Agreements. An arbitration award is more likely to stand where each of the parties had the opportunity to argue and present evidence before the arbitration panel prior to the award being ordered. *See, Yasuda,* 37 F.3d at 352. The interim order for the arbitration award shows that both Zurich and Trend were given adequate opportunity to brief and argue their position on the amount awarded in front of the arbitration panel. The evidence shows that the arbitrators considered arguments from both sides before determining the appropriate amount of the prehearing security. The amount the arbitrators awarded is consistent with Zurich's interpretation

of the Program Agreements.  At this point in the proceedings, this is sufficient.

Next, Trend contends that the Program Agreements are invalid under Texas law and therefore the award (which is based on damages resulting specifically from those agreements) is unenforceable.  The validity of the Program Agreements is one of the ultimate questions of the arbitration.  The arbitrators were not required to consider this type of merits questions when determining whether to issue the interim award.  *Yasuda,* 37 F.3d at 352.  Any other rule would result in premature conclusions about arbitration issues before all evidence is considered. *See, id.*  Furthermore, the arbitrators' statement that the order was made without prejudice to Trend's rights to challenge the validity of the Program Agreements was not, as Trend now argues, an admission by the arbitrators that they ordered the award without considering the parties' agreements.  Rather, it was the arbitrators signal to the parties that the prehearing security did not reflect a foregone conclusion on the merits of the dispute regarding the validity of the agreements.  The arbitration panel was right to refuse to consider this issue before the arbitration proceedings.  Trend's dispute of the validity of the Program Agreements should be reserved for the arbitration proceedings.

Finally, Trend claims that the amount of the award is inflated by $213,901.82 because Zurich initially requested an award lower than what was ultimately ordered by the arbitration panel. This question is closely tied to the merits question above. *See, Yasuda,* 37 F.3d at 352 ("Suppressing debate over the amount of the letter of credit is temporary to the extent that the arbitration panel will visit the same issue during arbitration of the ultimate dispute between the parties."). Even if the amount of the prehearing security was an error, this is not a valid reason for the Court to vacate the award. *Bormet,* 58 F.3d at 333 ("Factual or legal errors by arbitrators — even clear or gross errors — do not authorize courts to annul awards." (internal quotations omitted)). As in *Yasuda,* any dispute over the amount of the award will be revisited during arbitration of the ultimate dispute between the parties. *Id.*

## IV. CONCLUSION

For the reasons stated herein, Petitioners' Motion to Confirm the Arbitration Award [ECF No. 75] is granted.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

Dated: August 24, 2016